IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

IN RE:   ASBESTOS PRODUCTS LIABILITY      Civil Action
         LITIGATION (NO. VI)              No. MDL 875
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X
This document related To: <u>District of Massachusetts</u>

BEVERLY PEARSON, as Administrator of the Estate of
DONALD PEARSON; and FLORA SMART, as Parent and Next
Friend of ALICE SMART,

                 Plaintiff,              Civil Action
                                         No.
v.
                                         **COMPLAINT**
METROPOLITAN LIFE INSURANCE COMPANY
CERTAIN-TEED CORPORATION                 **PLAINTIFF DEMANDS**
GEORGIA-PACIFIC CORPORATION              **A TRIAL BY JURY**
UNION CARBIDE CORPORATION
GOUVENEUR TALC COMPANY, INC.
ST. LAWRENCE LIQUIDATING CORPORATION
R.T. VANDERBILT COMPANY, INC.,           **05 cv 10812**

                 Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

Now comes the plaintiff, by her attorneys, and

files the following complaint:

Jurisdiction of this Court exists pursuant to 28

United States Code Section 1332.  The plaintiff is a

citizen of the Commonwealth of Massachusetts and the

defendants are incorporated in states other than

Massachusetts, and their principal place of business

is in states other than Massachusetts.  The matter

arises under the Constitution and under the laws of

the United States.  The amount in controversy exceeds

$75,000 exclusive of interest and costs.

1.   <u>PARTY PLAINTIFF</u>

Plaintiff, Beverly Pearson, is the Administrator

1

of the Estate of Donald Pearson, and resides at 300
Uniroyal Road, Lot #152, Opelika, Alabama  036801.
Plaintiff, Flora Smart, is the Parent and Next Friend
of Alice Smart, the minor child of Donald Pearson, and
resides at 66 Hutchings Street, Roxbury, Massachusetts
02119.

2.   PARTY DEFENDANTS

2A.   The defendant, Metropolitan Life Insurance
Company (hereinafter "Metropolitan"), is a foreign
corporation which does or has done business in the
Commonwealth of Massachusetts.

2B.   The defendant, Certain-Teed Corporation, is
a foreign corporation incorporated under the laws of
the State of Maryland, with a principal place of
business in the State of Pennsylvania, and either has
done or is doing business in the Commonwealth of
Massachusetts.

2C.   The defendant, Georgia-Pacific Corporation,
is a foreign corporation having a principal place of
business in the State of Georgia and has conducted
business in the Commonwealth of Massachusetts.

2D.   The defendant, Union Carbide Corporation, is
a Connecticut corporation with a principal place of
business outside the Commonwealth of Massachusetts and
has conducted business in the Commonwealth of
Massachusetts.

2E.   The defendant, Gouverneur Talc Company,

2

Inc., is a corporation incorporated under the laws of the State of New York, having a principal place of business outside the Commonwealth of Massachusetts, and has conducted business in the Commonwealth of Massachusetts.

2F. The defendant, St. Lawrence Liquidating Corporation, is a corporation which was incorporated under the laws of the State of New York, having a principal place of business located outside the Commonwealth of Massachusetts. The St. Lawrence Liquidating Corporation is the legal successor to International Talc Company, Inc., which was incorporated under the Laws of the State of New York, having a principal place of business located outside the Commonwealth of Massachusetts, and has conducted business in the Commonwealth of Massachusetts.

2G. The defendant, R.T. Vanderbilt Company, Inc., is a foreign corporation having a principal place of business outside the Commonwealth of Massachusetts and has conducted business in the Commonwealth of Massachusetts.

As used in this Complaint, the terms "defendant", "defendants" or "defendant corporations" shall include the party defendants identified in paragraphs 2A-2G hereof, and their predecessors and successors, which shall include, but is not limited to, any person, corporation, company or business entity: which formed

3

part of any combination, consolidation, merger or reorganization from which any party defendant was created or was the surviving corporation or other entity, or into which any party defendant was merged, consolidated or reorganized; whose assets, stock, property, employees, customers, good will, products or product line was acquired by or from any party defendant; whose patent rights, trademark rights, trade secrets or goodwill was acquired by or from any party defendant; or, which was dominated or controlled by any party defendant to such an extent that said party defendant was the "alter ego" of said corporation.

3. The plaintiff's cause of action arises from the defendants: (a) transacting business in Massachusetts; (b) contracting to supply and/or sell goods in Massachusetts; (c) doing or causing a tortious act to be done within Massachusetts; and/or, (d) causing the consequence of a tortious act to occur within Massachusetts.

4. Plaintiff's decedent, Donald Pearson, was exposed to defendants' asbestos and asbestos-containing materials while working as a construction laborer, drywall worker, and foundry worker at various sites in the Commonwealth of Massachusetts and other states from approximately 1967 to the 1980's.

5. During the period of time set forth in

4

Paragraph 4, the plaintiff's decedent was exposed to and did inhale and/or ingest asbestos dust, fibers, and particles, which dust, fibers, and particles came from the asbestos or asbestos-containing products which were mined, milled, manufactured, fabricated, supplied and/or sold by the defendant corporations.

6.   The asbestos and asbestos-containing products to which the plaintiff's decedent was exposed were mined, milled, manufactured, fabricated, supplied, and/or sold by the defendant corporations, acting through their duly authorized agents, servants, and employees, who were then and there acting in the course and scope of their employment and in furtherance of the business of the defendants.

7.   At all times pertinent hereto, the defendant corporations were engaged in the business of mining, milling, manufacturing, fabricating, supplying, and/or selling asbestos and asbestos-containing products.

8.   At all times pertinent hereto, the asbestos products were products mined, milled, manufactured, fabricated, supplied and/or sold by the defendant corporations and reached the plaintiff's decedent without any substantial change in the condition of the product or products from the time that they were sold.

## COUNT I

### NEGLIGENCE

9.   Plaintiff realleges the allegations of

5

Paragraphs 1 through 8 of the Complaint, and by reference, makes them part of this Count.

10.  It was the duty of the defendant corporations to use and exercise reasonable and due care in the manufacture, fabricating, testing, inspection, production, marketing, packaging and sale of their asbestos and asbestos-containing products.

11.  It was also the duty of the defendant corporations to provide detailed and adequate instructions relative to the proper and safe handling and use of their asbestos and asbestos products, and to provide detailed and adequate warnings concerning any and all dangers, characteristics, and potentialities of their asbestos and asbestos-containing products.

12.  It was the continuing duty of the defendant corporations to advise and warn purchasers, consumers, users, and prior purchasers, consumers, and users of all dangers, characteristics, potentialities and defects discovered subsequent to their initial marketing or sale of their asbestos and asbestos-containing products.

13.  Yet, nevertheless, wholly disregarding the aforesaid duties, the defendant corporations breached their duties by: (a) failing to warn the plaintiff's decedent of the dangers, characteristics, and potentialities of their asbestos-containing product or

6

products when the defendant corporations knew or
should have known that exposure to their asbestos-
containing products would cause disease and injury;
(b) failing to  warn the plaintiff's decedent of the
dangers to which he was exposed when they knew or
should have known of the dangers; (c) failing to
exercise reasonable care to warn the plaintiff's
decedent of what would be safe, sufficient, and proper
protective clothing, equipment, and appliances when
working with or near or being exposed to their
asbestos and asbestos-containing products; (d) failing
to provide safe, sufficient and proper protective
clothing, equipment and appliances with their
asbestos-containing products or products; (e) failing
to test their asbestos and asbestos products in order
to ascertain the extent of dangers involved upon
exposure thereto; (f) failing to conduct such research
as should have been conducted in the exercise of
reasonable care, in order to ascertain the dangers
involved upon exposure to their asbestos and
asbestos-containing products; (g) failing to remove
the product or products from the market when the
defendant corporations knew or should have known of
the hazards of exposure to their asbestos and
asbestos-containing products; (h) failing upon
discovery of the dangers, hazards, and potentialities
of exposure to asbestos to adequately warn and apprise

7

the plaintiff's decedent of said dangers, hazards, and potentialities discovered; (i) failing upon discovery of the dangers, hazards, and potentialities of exposure to asbestos to package said asbestos and asbestos-containing products so as to eliminate said dangers, hazards, and potentialities; and, (j) generally using unreasonable, careless, and negligent conduct in the manufacture, fabricating, supply, or sale of their asbestos and asbestos-containing products.

14. As a direct and proximate result of the unreasonable, careless, and negligent conduct of the defendant corporations, plaintiff's decedent, Donald Pearson, contracted lung cancer and other asbestos-related disease which substantially contributed to his death on April 25, 2002. Prior to his death, Donald Pearson, endured great physical pain and suffering, and incurred substantial medical expenses in connection with the treatment of his lung cancer and other asbestos-related disease. Furthermore, the Estate of Donald Pearson has incurred funeral expenses and other expenses occasioned by his death and has been deprived of his capacity to earn money during his probable working life.

15. The defendants knew, or with the reasonable exercise of care, should have known of the dangerous characteristics, properties, and potentialities of

8

asbestos and asbestos-containing products.

WHEREFORE, Plaintiff, Beverly Pearson, as Administrator of the Estate of Donald Pearson, demands compensatory damages, plus interest and costs.

## COUNT II

## BREACH OF EXPRESSED AND IMPLIED WARRANTIES

16.  The allegations of Count I are hereby incorporated by reference.

17.  The plaintiff's decedent was a person whom the defendants could reasonably have expected to use, consume, or be affected by the defendants' asbestos and asbestos-containing products within the meaning of Massachusetts General Laws c. 106, sec. 2-318, as the defendants knew or had reason to know that their asbestos-containing products would be used in the insulation or construction industry and that individuals such as the plaintiff's decedent would come in contact with such asbestos materials.

18.  The defendants expressly and impliedly warranted that the asbestos and asbestos-containing products described above were merchantable, safe, and fit for their ordinary purposes, and the particular purposes and requirements of plaintiff's decedent.

19.  The defendants had reason to know of the particular purposes for which their asbestos and asbestos-containing products would be used.

9

20. The plaintiff's decedent relied upon the defendants' skill or judgment in selecting suitable insulation or construction products for safe use.

21. The defendants breached these warranties, in that the asbestos-containing products they sold were not merchantable, safe, suitable, or fit for their ordinary or particular purposes.

22. As a direct and proximate result of the defendants' breach of warranties, the plaintiff's decedent, Donald Pearson, contracted lung cancer and other asbestos-related disease which substantially contributed to his death on April 25, 2002. Prior to his death, Donald Pearson endured great physical pain and suffering, and incurred substantial medical expenses in connection with the treatment of his lung cancer and other asbestos-related disease. Furthermore, the Estate of Donald Pearson has incurred funeral expenses and other expenses occasioned by his death and has been deprived of his capacity to earn money during his probable working life.

WHEREFORE, plaintiff, Beverly Pearson, as Administrator of the Estate of Donald Pearson, demands compensatory damages, plus interest and costs.

### COUNT III

<u>CONSPIRACY OR CONCERT OF ACTION:  METROPOLITAN ONLY</u>

23. Plaintiff realleges the allegations of Paragraphs 1 through 22 of the Complaint, and by

reference, makes them part of this Count.

24.   In addition, during the time period set
forth in Paragraph 4, the plaintiff's decedent was
exposed to and did inhale and/or ingest asbestos dust,
fibers, and particles, which dust, fibers, and
particles came from the asbestos or asbestos-
containing products which were mined, milled,
manufactured, fabricated, supplied and/or sold by the
Johns Manville Corporation (hereinafter "Manville")
and/or Raymark Industries, Inc. (hereinafter
"Raymark").

25.   The defendant, Metropolitan Life Insurance
Company, (hereinafter "Metropolitan") together with
Manville, Raymark and other persons and entities,
known and unknown at times relevant hereto, engaged in
a conspiracy or concert of action to inflict injury on
the plaintiff's decedent, and to withhold, alter,
suppress and misrepresent information about the health
effects of asbestos exposure.  One or more of said
conspirators did cause tortious injury to the
plaintiff's decedent in the course of or as a
consequence of the conspiracy or concert of action.
At least the following enumerated acts were undertaken
by the conspirators in the course of and in
furtherance of the conspiracy or concert of action.

a.   In 1932, Metropolitan, through its agents,
Dr. Anthony Lanza and others, assisted

11

Manville with medical examinations of over
1,000 employees of Manville's factory in
Manville, New Jersey.  The report of this
study shows that a large percentage of the
employees suffered from asbestosis including
employees not directly involved in the
manufacturing process.  This 1932 medical
survey was not published in the medical
literature and, therefore, was unavailable
to scientists studying the issue of asbestos
disease.  Further collaboration between
Manville and Metropolitan continued the
cover-up.

b.    Beginning in approximately 1934, Manville,
through its agents, Vandiver Brown and
Attorney J.C. Hobart, suggested to Dr.
Anthony Lanza, Associate Director of
Metropolitan, (insurer of Manville and
Raymark) that Lanza publish a study on
asbestosis in which Lanza would
affirmatively misrepresent material facts
about the health consequences of asbestos
exposure.  This was accomplished through
intentional deletion of Lanza's description
of asbestosis as "fatal" and through other
selective editing that affirmatively
misrepresented asbestosis as a disease

12

process less serious than it actually is and
was known to be.  As a result, Lanza's study
was published in the medical literature in
this misleading fashion in 1935.  The
conspirators were motivated, in part, to
effectuate this fraudulent misrepresentation
and fraudulent nondisclosure by the desire
to influence proposed legislation to
regulate asbestos exposure and to provide a
defense in lawsuits involving Manville,
Raymark and Metropolitan, as insurer.
Furthermore, upon information and belief, it
is alleged that Metropolitan, at all times
relevant hereto, had substantial monetary
investments in Manville and Raymark, among
other asbestos product manufacturers and
distributors.

c.    In 1936, the conspirators or some of them
including Manville, Raymark, and other
companies entered into an agreement with the
Saranac Laboratories in New York.  Under
this agreement, these conspirators acquired
the power to decide what information Saranac
Laboratories could publish about asbestos
disease and to control in what form such
publications were to occur.  This agreement
gave these conspirators power to

13

affirmatively misrepresent the results of
the work at Saranac, and also gave these
conspirators power to suppress material
facts included in any study.  On numerous
occasions thereafter, the conspirators
exercised their power to prevent Saranac
scientists from disclosing material
scientific data, resulting in numerous
misstatements of fact being made at
scientific meetings.

d.    By November 1948, or earlier, Manville,
Metropolitan (acting through Dr. Lanza),
Raymark, and others decided to exert their
influence to materially alter and
misrepresent material facts about the
substance of research started by Dr. Leroy
Gardner at the Saranac Laboratories
beginning in 1936.  Dr. Gardner's research
involved carcinogenicity of asbestos in mice
and also included an evaluation of the
health effects of asbestos on humans with a
critical review of the then-existing
standards of dust exposure for asbestos and
asbestos products.

e.    At a meeting on November 11, 1948, these
conspirators and others intentionally and
affirmatively determined that Dr. Gardner's

14

work should be edited to specifically delete
material facts about the cancer-causing
propensity of asbestos and the health
effects of asbestos on humans and they
determined that only an edited version would
be published. These conspirators thereby
fraudulently misrepresented the risks of
asbestos exposure to the public, in general,
and to the class of persons exposed to
asbestos, including the plaintiff's
decedent.

f.   As a direct result of influence exerted by
the above-described conspirators, Dr. Arthur
Vorwald published Dr. Gardner's edited work
in the <u>Journal of Industrial Hygiene, AMA
Archives of Industrial Hygiene and
Occupational Health</u> in 1951 in a form that
stressed those portions of Dr. Gardner's
work that the conspirators wished stressed,
but which omitted references to human
asbestosis and cancer, thereby fraudulently
and affirmatively misrepresenting the extent
of the risks. The conspirators
affirmatively and deliberately disseminated
this misleading Vorwald publication to
university libraries, government officials,
agencies and others.

15

g.    Such action constituted a material
affirmative misrepresentation of the
material facts involved in Dr. Gardner's
work and resulted in creating an appearance
that inhalation of asbestos was a less
serious health concern than Dr. Gardner's
unedited work indicated.

26.   Plaintiff further alleges that Metropolitan,
Manville, Raymark and/or their predecessors in
interest knowingly agreed, contrived, combined,
confederated and conspired among themselves to cause
plaintiff's decedent injuries, diseases, and/or
illnesses by exposing plaintiff's decedent to harmful
and dangerous asbestos-containing products and/or
machinery requiring or calling for the use of asbestos
and/or asbestos-containing products.  Metropolitan,
Manville, and Raymark further knowingly agreed,
contrived, combined, confederated and conspired to
deprive plaintiff's decedent of the opportunity of
informed free choice as to whether to use said
asbestos-containing products and/or machinery
requiring or calling for the use of asbestos and/or
asbestos-containing products or to expose themselves
to said dangers.  In this connection, plaintiff has
sued the Metropolitan Life Insurance Company in its
capacity as a conspirator and because it committed
tortious act in concert with others pursuant to a

16

common design.  Metropolitan, Manville, and Raymark
committed the above-described wrongs by willfully
misrepresenting and suppressing the truth as to the
risks and dangers associated with the use of and
exposure to Manville's and/or Raymark's asbestos-
containing products and/or machinery requiring or
calling for the use of asbestos and/or asbestos-
containing products.

    27.  In furtherance of said conspiracies,
Metropolitan, Manville, and Raymark performed the
following overt acts:

        a.    for many decades, Metropolitan,
individually, jointly and in conspiracy with
Manville and Raymark, have been in
possession of medical and scientific data,
literature and test reports which clearly
indicated that the inhalation of asbestos
dust and fibers resulting from the ordinary
foreseeable use of said asbestos-containing
products and/or machinery requiring or
calling for the use of asbestos or asbestos-
containing products were unreasonably
dangerous, hazardous, deleterious to human
health, carcinogenic, and potentially
deadly;

        b.    despite the medical and scientific data,
literature and test reports possessed by and

available to Metropolitan, individually and in conspiracy with Manville and Raymark, fraudulently, willfully and maliciously:

(i) withheld, concealed and suppressed said medical and scientific data, literature, and test reports regarding the risks of asbestosis, cancer, mesothelioma and other illnesses and diseases from plaintiff's decedent who were using and being exposed to Manville or Raymark asbestos-containing products and/or machinery requiring or calling for the use of asbestos and/or asbestos-containing products;

(ii) caused to be released, published and disseminated medical and scientific data, literature, and test reports containing information and statements regarding the risks of asbestosis, cancer, mesothelioma and other illnesses and diseases, which Metropolitan, Manville, and Raymark knew were either incorrect, incomplete, outdated and misleading; and

(iii) distorted the results of medical examinations conducted upon workers such as plaintiff's decedent who were

18

using asbestos-containing products
and/or machinery requiring or calling
for the use of asbestos and/or
asbestos-containing products and being
exposed to the inhalation of asbestos
dust and fibers by falsely stating
and/or concealing the nature and extent
of the harm to which workers such as
plaintiff's decedent suffered; and

(iv) failing to adequately warn the
plaintiff's decedent of the dangers to
which he was exposed when they knew of
the dangers.

c.    by the false and fraudulent representations,
omissions, failures, and concealments set
forth above, Metropolitan, Manville, and
Raymark, individually, jointly, and in
conspiracy with each other, intended to
induce the plaintiff's decedent to rely upon
said false and fraudulent representations,
omissions, failures, and concealments, to
continue to expose themselves to the dangers
inherent in the use of and exposure to their
asbestos-containing products and/or
machinery requiring or calling for the use
of asbestos and/or asbestos-containing
products.

19

Said misrepresentations were false, incomplete, and misleading and constitute negligent misrepresentations as defined by Sections 311 and 522 of the Restatement (Second) of Torts.

28.    Plaintiff's decedent reasonably and in good faith relied upon the false and fraudulent representations, omissions, failures, and concealments made by Metropolitan, Manville, and Raymark regarding the nature of their asbestos-containing products and/or machinery requiring or calling for the use of asbestos and/or asbestos-containing products.

29.    As a direct and proximate result of the conspiracy and concert of action between Metropolitan, Manville and Raymark, the plaintiff's decedent was deprived of the opportunity of informed free choice and connection with the use of and exposure to Manville and Raymark's asbestos and asbestos-containing products, and therefore continued to work with and be exposed to the co-conspirator corporation's asbestos and asbestos-containing products and as a result contracted asbestos-related diseases and other conditions, and/or aggravated pre-existing conditions, as a result of which the plaintiff's decedent suffered a dramatic reduction of his life expectancy, incurred great mental and physical pain and suffering, sustained lost wages and lost earning capacity, incurred medical expenses, and

their enjoyment of life has been greatly impaired,
which damages are continuing in nature.

WHEREFORE, plaintiff, Beverly Pearson, as
Executrix of the Estate of Donald Pearson, demands
compensatory damages, plus interest and costs.

COUNT IV

UNDERTAKING OF SPECIAL DUTY:  METROPOLITAN ONLY

30.  Plaintiff realleges the allegations of
Paragraphs 1 through 29 of the Complaint, and by
reference, makes them part of this Count.

31.  Defendant Metropolitan, through its
Policyholders Service Bureau, undertook duties owed by
entities which manufactured, sold, supplied, or
distributed asbestos-containing products, including
Manville and Raymark to plaintiff's decedent by
testing of asbestos workers and the conduct of
scientific studies.  These duties included, without
limitation, as follows:

   a.   to test fully and adequately for health
        risks concomitant to the normal and intended
        use of their products; and

   b.   to instruct fully and adequately in the use
        of their products so as to eliminate or
        reduce the health hazards concomitant with
        their normal or intended use.

In undertaking these duties, Metropolitan knew or
should have known that it was providing testing

services for the ultimate protection of third persons, including the plaintiff's decedent.

32.   In both conducting said tests and publishing their alleged results, Metropolitan failed to exercise reasonable care to conduct or publish complete, adequate, and accurate tests of the health effects of asbestos.  Metropolitan also caused to be published intentionally false, misleading, inaccurate and deceptive information about the health effects of asbestos exposure.  In so acting, Metropolitan breached their special responsibility by failing to exercise reasonable care to protect their undertaking, as described above.

33.   The plaintiff's decedent unwittingly but justifiably relied upon the thoroughness of Metropolitan's tests and information dissemination, the results of which Metropolitan published in leading medical journals.

34.   In failing to test fully and adequately for the adverse health effects from exposure asbestos; in delaying the publication of such results; and in falsely editing such results as were obtained; in suppressing relevant medical inquiry and knowledge about those hazards to promote the sale and distribution of asbestos as a harmless product; and in collaborating with entities which manufactured, sold, supplied, or distributed asbestos-containing products,

22

including Manville and Raymark materially to understate the hazards of asbestos exposure, all for pecuniary profit and gain, Metropolitan acted recklessly, wantonly, and in calculated disregard for the welfare of the general public, including the plaintiff's decedent.

35. As a direct and proximate result of Metropolitan's failures to conduct or accurately publish adequate test or disseminate accurate and truthful information, after undertaking to do so; (i) the risk of harm to the plaintiff's decedent from asbestos exposure was increased, and (ii) plaintiff's decedent contracted asbestos-related diseases and other conditions, and/or aggravated pre-existing conditions, as a result of which the plaintiff's decedent suffered a dramatic reduction of their life expectancy, incurred great mental and physical pain and suffering, sustained lost wages and lost earning capacity, incurred medical expenses, and their enjoyment of life has been greatly impaired, which damages are continuing in nature.

WHEREFORE, plaintiff, Beverly Pearson, as Executrix of the Estate of Donald Pearson, demands compensatory damages, plus interest and costs.

## COUNT V

### WRONGFUL DEATH

36. The allegations of Counts I through IV are

23

hereby incorporated by reference.

37.    As a result of working with, around or near others who worked with, around or near asbestos materials supplied by defendants to plaintiff's decedent's employers, plaintiff's decedent contracted lung cancer and other asbestos-related disease, which substantially contributed to his death on April 25, 2002.

38.    Plaintiff's decedent is survived by his family, who by reason of said death has been deprived of income, services, protection, care, society, companionship, comfort, guidance, counsel, and advice of the said plaintiff's decedent.  In addition, the estate of plaintiff's decedent has incurred reasonable funeral and burial expenses as a result of the death of plaintiff's decedent.

WHEREFORE, the plaintiff, Beverly Pearson as Administrator of the Estate of Donald Pearson, demands compensatory and punitive damages, plus interest and costs.

### COUNT VI

### MALICIOUS, WILLFUL, WANTON AND RECKLESS
### CONDUCT OR GROSS NEGLIGENCE

39.    The allegations of Counts I through V are hereby incorporated by reference.

40.    As early as 1929, the defendants, or some of them, possessed medical and scientific data clearly

24

indicating that asbestos and asbestos-containing products were hazardous to the health and safety of Donald Pearson and others in his position.

41.   The defendants, or some of them, during the 1930's, 1940's, 1950's, and 1960's became possessed of voluminous medical and scientific data, studies, and reports, which information conclusively established that asbestos and asbestos-containing products were hazardous to the health and safety of Donald Pearson and all other persons exposed to the products.

42.   The defendants, or some of them, since the 1930's have had numerous workmen's compensation claims filed against them by former asbestos workers or employees, or knew such claims were filed against asbestos product suppliers and manufacturers.

43.   Prompted by pecuniary motives, the defendants ignored and failed to act upon such medical and scientific data and conspired to deprive the public, and particularly the users, from access to said medical and scientific data, thereby depriving them of the opportunity of free choice as to whether or not to expose themselves to the asbestos products of the defendants.

44.   The defendants acted maliciously, willfully, wantonly, and recklessly, or with gross negligence, by continuing to market their asbestos products, with reckless disregard for the health and safety of

25

plaintiff's decedent and other users or consumers, knowing the dangerous characteristics and propensities of said asbestos products, but still depriving those affected by the dangers from information about those dangers.

45. Because the defendants acted maliciously, willfully, wantonly, and recklessly, or with gross negligence, in marketing their hazardous asbestos and asbestos-containing products, in ignoring the medical and scientific data which was available to them, and depriving consumers, users, and the general public from that medical and scientific data, the plaintiff, Beverly Pearson as Administrator of the Estate of Donald Pearson is entitled to punitive damages.

WHEREFORE, the plaintiff, Beverly Pearson, as Administrator of the Estate of Donald Pearson demands punitive damages, in addition to the damages demanded in Counts I, II, and III, plus interest and costs.

## COUNT VII

## LOSS OF PARENTAL SOCIETY

46. Plaintiff realleges the allegations of Paragraphs 1 through 45 of the Complaint, and by reference, makes them part of this Count.

47. Alice Smart is the minor daughter of Donald Pearson, and at all pertinent times was the minor daughter of Donald Pearson.

48. As a direct and proximate result of the

26

breach of duty and wrongdoing of the defendant and the resultant injury of Donald Pearson, as more particularly described in Counts I through VI, Alice Smart suffered a loss of her father's services, society, and companionship, and has suffered great mental anguish.

WHEREFORE, the plaintiff, Alice Smart, demands compensatory damages plus interest and costs.

Plaintiff demands a trial by jury on all issues.

DATED:    April 22, 2005

Respectfully submitted,

Allyson S. Hauck
(BBO #659547)
THORNTON & NAUMES, LLP
100 Summer Street, 30th floor
Boston, MA 02110
(617) 720-1333

%JS 44  (Rev. 11/04)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.  (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a)  PLAINTIFFS
BEVERLY PEARSON, as Administrator of the Estate of DONALD PEARSON; and FLORA SMART, as Parent and Next Friend of ALICE SMART

**DEFENDANTS**
METROPOLITAN LIFE INSURANCE COMPANY, et al.

**(b)** County of Residence of First Listed Plaintiff  Suffolk
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant
(IN U.S. PLAINTIFF CASES ONLY)

NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE
LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number) (617) 720-1333
Allyson S.Hauck, Esq.
THORNTON & NAUMES, LLP, 100 Summer St., Boston 02110

Attorneys (If Known)

**05 CV 10812**

## II. BASIS OF JURISDICTION  (Place an "X" in One Box Only)

☐ 1  U.S. Government
      Plaintiff

☐ 3  Federal Question
      (U.S. Government Not a Party)

☐ 2  U.S. Government
      Defendant

☒ 4  Diversity
      (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT  (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Med. Malpractice | ☐ 625 Drug Related Seizure | 28 USC 157 | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | Liability | ☐ 365 Personal Injury - | of Property 21 USC 881 | | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 460 Deportation |
| & Enforcement of Judgment | Slander | ☒ 368 Asbestos Personal | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 470 Racketeer Influenced and |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | Injury Product | ☐ 650 Airline Regs. | ☐ 830 Patent | Corrupt Organizations |
| ☐ 152 Recovery of Defaulted | Liability | Liability | ☐ 660 Occupational | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| Student Loans | ☐ 340 Marine | **PERSONAL PROPERTY** | Safety/Health | | ☐ 490 Cable/Sat TV |
| (Excl. Veterans) | ☐ 345 Marine Product | ☐ 370 Other Fraud | ☐ 690 Other | | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment | Liability | ☐ 371 Truth in Lending | **LABOR** | **SOCIAL SECURITY** | ☐ 850 Securities/Commodities/ |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 380 Other Personal | ☐ 710 Fair Labor Standards | ☐ 861 HIA (1395ff) | Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | Property Damage | Act | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge |
| ☐ 190 Other Contract | Product Liability | ☐ 385 Property Damage | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | 12 USC 3410 |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal | Product Liability | ☐ 730 Labor/Mgmt.Reporting | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | Injury | | & Disclosure Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | **FEDERAL TAX SUITS** | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate | ☐ 790 Other Labor Litigation | ☐ 870 Taxes (U.S. Plaintiff | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 442 Employment | Sentence | ☐ 791 Empl. Ret. Inc. | or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ | **Habeas Corpus:** | Security Act | ☐ 871 IRS—Third Party | ☐ 895 Freedom of Information |
| ☐ 240 Torts to Land | Accommodations | ☐ 530 General | | 26 USC 7609 | Act |
| ☐ 245 Tort Product Liability | ☐ 444 Welfare | ☐ 535 Death Penalty | | | ☐ 900Appeal of Fee Determination |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - | ☐ 540 Mandamus & Other | | | Under Equal Access |
| | Employment | ☐ 550 Civil Rights | | | to Justice |
| | ☐ 446 Amer. w/Disabilities - | ☐ 555 Prison Condition | | | ☐ 950 Constitutionality of |
| | Other | | | | State Statutes |
| | ☐ 440 Other Civil Rights | | | | |

## V. ORIGIN  (Place an "X" in One Box Only)

☒ 1 Original
     Proceeding

☐ 2 Removed from
     State Court

☐ 3 Remanded from
     Appellate Court

☐ 4 Reinstated or
     Reopened

☐ 5 Transferred from
     another district
     (specify)

☐ 6 Multidistrict
     Litigation

☐ 7 Appeal to District
     Judge from
     Magistrate
     Judgment

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
Asbestos Litigation 28 USC, 1332, 1441
Brief description of cause:

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION
   UNDER F.R.C.P. 23

DEMAND $ 75,000.00

CHECK YES only if demanded in complaint:
JURY DEMAND:  ☒ Yes  ☐ No

## VIII. RELATED CASE(S) IF ANY
(See instructions):  JUDGE  Weiner    DOCKET NUMBER  MDL 875 E.D. Pa.

DATE
April 22, 2005

SIGNATURE OF ATTORNEY OF RECORD
Allyson S. Hauck, Esq.
THORNTON & NAUMES, LLP

**FOR OFFICE USE ONLY**

RECEIPT #          AMOUNT          APPLYING IFP          JUDGE          MAG. JUDGE

**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

1. Title of case (name of first party on each side only)  BEVERLY PEARSON, as Administrator of the Estate of
DONALD PEARSON; and FLORA SMART, as Parent and Next Friend of ALICE SMART

2. Category in which the case belongs based upon the numbered nature of suit code listed on the civil cover sheet.  (See local
rule 40.1(a)(1)).

| | | |
|---|---|---|
| [ ] | I. | 160, 410, 470, R.23, REGARDLESS OF NATURE OF SUIT. |
| [x] | II. | 195, 196, 368, 400, 440, 441-446, 540, 550, 555, 625, 710, 720, 730,  *Also complete AO 120 or AO 121 |
| | | 740, 790, 791, 820*, 830*, 840*, 850, 890, 892-894, 895, 950.  for patent, trademark or copyright cases |
| [ ] | III. | 110, 120, 130, 140, 151, 190, 210, 230, 240, 245, 290, 310, |
| | | 315, 320, 330, 340, 345, 350, 355, 360, 362, 365, 370, 371, |
| | | 380, 385, 450, 891. |
| [ ] | IV. | 220, 422, 423, 430, 460, 480, 490, 610, 620, 630, 640, 650-660, |
| | | 690, 810, 861-865, 870, 871, 875, 900. |
| [ ] | V. | 150, 152, 153. |

# 10812

3. Title and number, if any, of related cases.  (See local rule 40.1(g)).  If more than one prior related case has been filed in this
district please indicate the title and number of the first filed case in this court.
None

4. Has a prior action between the same parties and based on the same claim ever been filed in this court?
YES [ ]    NO [X]

5. Does the complaint in this case question the constitutionality of an act of congress affecting the public interest?   (See 28 USC
§2403)
YES [ ]    NO [X]

If so, is the U.S.A. or an officer, agent or employee of the U.S. a party?
YES [ ]    NO [ ]

6. Is this case required to be heard and determined by a district court of three judges pursuant to title 28 USC §2284?
YES [ ]    NO [X]

7. Do all of the parties in this action, excluding governmental agencies of the united states and the Commonwealth of
Massachusetts ("governmental agencies"),  residing in Massachusetts reside in the same division? - (See Local Rule 40.1(d)).
YES [ ]    NO [X]

A.    If yes, in which division do all of the non-governmental parties reside?

Eastern Division [ ]    Central Division [ ]    Western Division [ ]

B.    If no, in which division do the majority of the plaintiffs or the only parties, excluding governmental agencies,
residing in Massachusetts reside?

Eastern Division [X]    Central Division [ ]    Western Division [ ]

8. If filing a Notice of Removal - are there any motions pending in the state court requiring the attention of this Court? (If yes,
submit a separate sheet identifying the motions)
YES [ ]    NO [ ]

(PLEASE TYPE OR PRINT)
ATTORNEY'S NAME  Allyson S. Hauck, Esq.
ADDRESS  Thornton & Naumes, LLP, 100 Summer St., 30th fl., Boston, MA  02110
TELEPHONE NO.  (617) 720-1333

(CategoryForm.wpd - 2/15/05)